UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
STEPHANIE WILLIAMS,

                Plaintiff,

      - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-4734 (PKC)

PAMELA K. CHEN, United States District Judge:

        Plaintiff Stephanie Williams commenced this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Disability Insurance Benefits ("DIB"). On April 5, 2019, the Court granted the parties' stipulation to remand the Commissioner's decision for further consideration. Victor Fusco, attorney for Plaintiff, now moves for approval of attorney's fees pursuant to 42 U.S.C. § 406(b) in the amount of $28,125. For the reasons below, the Court grants the motion in part, denies it in part, and awards Fusco $19,070 in attorney's fees.

## BACKGROUND

        On December 22, 2014, Plaintiff completed an application (for herself and her dependent child) with the SSA, in which she alleged that she had been disabled as of July 25, 2013. (Administrative Transcript ("Tr."[1]), Dkt. 7, at 282.) Plaintiff's claim was denied on March 13, 2015. (*Id.* at 92.) After requesting a hearing, Plaintiff, represented by new counsel, appeared before Administrative Law Judge Dina R. Loewy (the "ALJ") on March 7, 2017. (*Id.* at 52.) In a

---

        [1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

decision dated May 3, 2017, the ALJ denied benefits. (*Id.* at 13.) On July 6, 2018, the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the ALJ's decision. (*Id.* at 1.)

Plaintiff then retained new counsel, Fusco, Brandenstein, and Rada, P.C. ("Counsel"), to represent her in her appeal of the decision in federal court. Plaintiff and Counsel entered into a fee agreement specifying that Plaintiff would pay Fusco "25% of any past due benefits as her counsel, if his efforts in the Federal Court were successful." (Dkt. 16-1, at 3.) On December 3, 2018, the Commissioner filed the Administrative Record. (Dkt. 7.) On January 22, 2019, Plaintiff filed a motion for judgment on the pleadings. (Dkt. 8.) On April 4, 2019, Plaintiff and the Commissioner stipulated to remand the case (*see* Dkt. 9), and the Court so ordered the stipulation the next day (*see* 4/5/2019 Docket Entry). On May 30, 2019, the Court ordered that $7,000 be awarded to Counsel under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). (*See* 5/30/2019 Docket Entry.)

On April 29, 2020, the ALJ on remand found that Plaintiff was disabled within the meaning of the SSA, as of May 21, 2014. (*See* Dkt. 16-3.) On September 14, 2020, the SSA issued a Notice of Award to Plaintiff (*see* Dkt. 16-4), and, on October 21, 2020, issued a Notice of Award to Plaintiff's dependent daughter (*see* Dkt. 16-5). The SSA withheld $52,540.75 to pay Plaintiff's representative, explaining that this "represent[ed] the balance of 25 percent of the past-due benefits for [Plaintiff] and her child." (Dkt. 16-6.)

On March 12, 2021, Counsel moved for attorney's fees under 42 U.S.C. § 406(b). (*See* Dkts. 15, 16.) The Commissioner filed a response on March 26, 2021 (*see* Dkt. 17), and Counsel filed a reply on April 6, 2021 (*see* Dkt. 18).

2

## DISCUSSION

**I.     Timeliness of the Motion**

Although 42 U.S.C. § 406(b) contains no time limitation for filing a motion for attorney's fees, the Second Circuit has determined that Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure "provides the applicable limitations period for filing § 406(b) motions." *Sinkler v. Berryhill*, 932 F.3d 83, 87–88 (2d Cir. 2019). Under Rule 54(d)(2)(B), a post-judgment motion for attorney's fees must "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). But this rule poses "a practical problem" in the context of § 406(b) motions: "the Commissioner typically does not calculate the amount of past-due benefits until months after the district court remands, and § 406(b) caps attorney's fees at 25% of the benefits award." *Sinkler*, 932 F.3d at 87. "[P]arties who must await the Commissioner's award of benefits on remand cannot be expected to file an application for attorney's fees that are statutorily capped by the amount of an as-yet-unknown benefits award." *Id.* at 88. Thus, the 14-day time limit under Rule 54(d)(2)(B) "is subject to equitable tolling when § 406(b) motions must await the SSA Commissioner's calculation of benefits." *Id.* at 91.

In *Sinkler*, however, the Second Circuit did not clarify when the equitable tolling period ends and the 14-day filing period begins to run. When summarizing its holding, the Second Circuit explained that the tolling period ends, and the filing period starts to run, when "the claimant receives notice" of the benefits award. *Id.* at 85, 91. But when discussing its reasoning, the Second Circuit indicated that the relevant date is "when *counsel* receives notice of the benefit award." *Id.* at 88 (emphasis added). Some courts, including this one, have suggested that starting the 14-day period when *counsel* receives notice of the benefit award is more consistent with *Sinkler*'s logic, because until counsel receives notice of the award, "the amount of the award remains 'as-yet-unknown' to the relevant party filing the § 406(b) motion." *See Diberardino v. Comm'r of Soc.*

3

*Sec.*, No. 17-CV-2868 (PKC), 2020 WL 6746828, at *2 (E.D.N.Y. Nov 17, 2020); *see also Phillip v. Comm'r of Soc. Sec.*, No. 18-CV-5005 (SN), 2021 WL 681289, at *2 (S.D.N.Y. Feb. 22, 2021); *Boylan v. Saul*, No. 15-CV-6730 (LTS) (JCF), 2020 WL 5235755, at *2 n. 3 (S.D.N.Y. Sept. 2, 2020).

The Section 406(b) motion in this case was filed well-beyond the 14-day filing period. The SSA mailed the Notice of Award to Plaintiff and her daughter on September 14, 2020 and October 21, 2020, respectively. Thus, the equitable tolling period ended, and the 14-day filing period began to run, at the latest on October 21, 2020. On January 19, 2021, the SSA sent a letter to Plaintiff informing her that $52,540.75 had been withheld to pay counsel fees. The Court presumes that Plaintiff received the letter three days later. *See Sinkler*, 932 F.3d at 89 n.5 ("Nothing in this opinion departs from the law's presumption that a party receives communications three days after mailing."). The instant motion was not filed until March 12, 2021, 35 days after Plaintiff is presumed to have received the most recent notice, and over four months after the second notice of award, which is when the 14-day filing period began to run.

Nevertheless, "by its very terms, the fourteen-day deadline of Rule 54 is not a fatal jurisdictional deadline." *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 227 (2d Cir. 2004) (citations omitted). Under Rule 6 of the Federal Rules of Civil Procedure, a court "may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). This includes motions made pursuant to Rule 54. *See Tancredi*, 378 F.3d at 226 (explaining that although there are exceptions to Rule 6(b)(1)(B), the deadline under Rule 54 "is not among them") (citing Fed. R. Civ. P. 6(b)(2)). Therefore, the untimeliness of a motion under Rule 54(d) may be excused if there is a finding of "excusable neglect." *See id.* at 227–28; *cf. Sinkler*, 932 F.3d at 89 ("[Rule 54] expressly states that

4

the specified period applies '[u]nless a statute or a court order provides otherwise.' Thus, district courts are empowered to enlarge that filing period where circumstances warrant." (second alteration in original) (internal citations omitted)).

Excusable neglect "is an 'elastic concept' that is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Tancredi*, 378 F.3d at 228 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 395 (1993)). Relevant circumstances include "prejudice to the other party, the reason for the delay, its duration, and whether the movant acted in good faith." *Raymond v. IBM Corp.*, 148 F.3d 63, 66 (2d Cir. 1998) (citing *Pioneer*, 507 U.S. at 395); *accord Tancredi*, 378 F.3d at 228. "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not *usually* constitute 'excusable' neglect[.]" *Raymond*, 148 F.3d at 66 (emphasis added) (quoting *Pioneer*, 507 U.S. at 391–92). But in light of the equitable principles underlying the concept of excusable neglect, "mere inadvertence, without more, *can* in some circumstances be enough to constitute 'excusable neglect' justifying relief under Rule 6(b)(2)," *id.* (emphasis in original), "at least when the delay was not long, there is no bad faith, there is no prejudice to the opposing party, and movant's excuse has some merit," *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995).

In this case, Fusco provides various reasons for filing his petition on March 12, 2021. Fusco states that he was experiencing a heavier workload than usual (*see* Dkt. 18, ¶ 15) and that, due to the COVID-19 pandemic, he and other attorneys were working from home. He further explains that working from home caused him to work more slowly because he has had to type his own briefs and he "is not a 'typist.'" (*See* Dkt. 18, ¶ 16.) Fusco also notes that working from home has delayed his receipt of mail because "[o]nly one clerk was in the office to receive but not process mail," (Dkt. 18, ¶ 19), and that Fusco filed his motion as soon as he became aware of the

5

SSA's January 19, 2021 letter to Plaintiff about money being withheld to pay attorney's fees (Dkt. 18-1 at ECF[2] 6).[3]

Although Fusco's explanations vary in legitimacy, the Court exercises its discretion to enlarge the 14-day filing period, given the unprecedented circumstances resulting from the pandemic and the delays Fusco experienced receiving mail. This aligns with other courts' decisions to expand the 14-day filing period in light of the COVID-19 pandemic. For example, in *Janes v. Saul*, No. 18-CV-5054 (GBD) (SDA), 2020 WL 7029173, at *3 (S.D.N.Y. July 28, 2020), *report and recommendation adopted sub nom. Janes v. Berryhill*, 498 F. Supp. 3d 540 (S.D.N.Y. 2020), the court forgave a delay of three months "[b]ecause [the] [p]laintiff's administrative counsel's office was closed due to the COVID-19 pandemic," so he did not receive the Notices of Award until nearly 3 months after they were mailed. In *Walls v. Commissioner of Social Security*, No. 17-CV-1669 (RMS), 2020 WL 3026462, at *3 (D. Conn. June 5, 2020), the court forgave the plaintiff's filing of a fee petition eight days after the 14-day filing period, given that there was a work-from-home order in place due to the COVID-19 pandemic, even though "counsel [did] not offer[] a justification for his short delay."

Accordingly, the Court exercises its discretion to enlarge the filing period for Fusco's § 406(b) application, and deems it timely.

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] Although Fusco states that he filed his fee petition as soon as he "was made aware of the January 21, 2021 letter," the Court assumes that he is referring to the SSA's January 19, 2021 letter.

**II.     Reasonableness of the Requested Fee**

Section 406(b) provides that a court may award a "reasonable fee" that is "not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled."  42 U.S.C. § 406(b)(1)(A).  The Court's determination of fees requested under § 406(b) "must begin with the agreement." *Wells v. Sullivan* (*Wells II*), 907 F.2d 367, 371 (2d Cir. 1990).  "[T]he district court may reduce the amount called for by the contingency agreement only when it finds the amount to be unreasonable." *Id*.

To determine whether a fee is "unreasonable," the Court considers: (1) "whether the contingency percentage is within the 25% cap;" (2) "whether there has been fraud or overreaching in making the agreement;" and (3) "whether the requested amount is so large as to be a windfall to the attorney." *Id*. at 372; *accord Diberardino*, 2020 WL 6746828, at *3.  "In addition, if fee awards are made to the attorney under both the EAJA and § 406(b), the attorney must refund to the plaintiff the amount of the smaller fee award." *Diberardino*, 2020 WL 6746828, at *3 (citations omitted); *see also Wells v. Bowen* (*Wells I*), 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under 42 U.S.C. § 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients.").

Fusco requests fees of $28,125, which is within the 25% cap.  Given that there are no allegations of fraud or overreaching with respect to the fee agreement, the only question is whether a fee of $28,125 would result in a windfall to Fusco.  The Court finds that it would.

Courts in this circuit have identified several relevant considerations in determining whether a requested award of attorney's fees would constitute a windfall: (1) "whether the attorney's efforts were particularly successful for the plaintiff"; (2) "whether the effort expended by the attorney is demonstrated through non-boilerplate pleadings and arguments that involved both real issues of

7

material fact and required legal research"; and (3) "whether the case was handled efficiently due to the attorney's experience in handling social security cases." *Diberardino*, 2020 WL 6746828, at *3 (citing *Rowell v. Astrue*, No. 05-CV-1592 (CBA) (JMA), 2008 WL 2901602, at *4 (E.D.N.Y. July 28, 2008)); *accord Theresa I. v. Saul*, No. 17-CV-1317 (DJS), 2020 WL 1526895, at *1–2 (N.D.N.Y. Mar. 30, 2020). "Although the reviewing court may not use the lodestar method to calculate the fee due, a record of the number of hours spent on the case in federal court may assist a court in determining whether a given fee is reasonable." *Benton v. Comm'r of Soc. Sec.*, No. 03-CV-3154 (ARR), 2007 WL 2027320, at *2 (E.D.N.Y. May 17, 2007); *see also Gisbrecht v. Barnhart*, 535 U.S. 789, 808 (2002) ("[T]he court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases.").

Here, Fusco spent four hours on this matter, while another attorney, Abbe Heiman, spent 33.5 hours. In addition, two paralegals spent a total of 3.2 hours. The usual hourly rate for paralegal work is $100. Multiplied by 3.2 hours, this results in $320 as reasonable compensation for the work performed by the paralegals. Subtracting this amount from the total fee amount available leaves $27,805. Divided by the total number of hours Fusco and Heiman worked on the case, this amounts to an effective hourly rate of $741.47 for each of the attorneys.

Although Fusco and Heiman are both experienced attorneys, with nearly 45 years of experience each handling social security cases, and their efforts achieved a successful result for Plaintiff and her daughter, the case was resolved by stipulation, saving Fusco and Heiman the need to review an opposing brief and respond. Further, Fusco notes that he spent more time than usual on this matter because he is "not a typist" and was working from home—delays that do not stem

8

from his expertise or the complexity of the case. (*See* Dkt. 18, ¶ 16.) Fusco also does not provide any information about his or Heiman's usual hourly rate. Considering the circumstances of this case and accounting for fee awards in comparable cases, the Court finds that compensating Counsel at an effective hourly rate of $741.47 is too high to be reasonable.[4] *Cf. Garmendiz v. Saul*, No. 17-CV-662 (JGK), 2021 WL 847999, at *1–2 (S.D.N.Y. Mar. 5, 2021) (reducing an attorney's requested fees of $50,919 for 35.2 hours of work to $17,600 or $500 per hour); *Espada v. Comm'r of Soc. Sec.*, No. 15-CV-1505 (SDA), 2020 WL 1322527, at *3 (S.D.N.Y. Mar. 21, 2020) (reducing an attorney's requested fees of $25,000 for 24.9 hours of work to $12,450 or $500 per hour); *Tamburri v. Saul*, No. 16-CV-5784 (PKC), 2019 WL 6118005, at *3 (E.D.N.Y. Nov. 18, 2019) (reducing an attorney's requested fees of $29,400 for 29.4 hours of work to $14,700 or $500 per hour); *Morris v. Saul*, No. 17-CV-259 (PKC), 2019 WL 2619334, at *3 (E.D.N.Y. June 26, 2019) (reducing an attorney's requested fees of $30,000 for 32.5 hours of work to $16,250 or $500 per hour). Thus, awarding Fusco $28,125 in attorneys' fees clearly would result in a windfall.

Instead, the Court finds that an award of $19,070—which reflects an hourly rate of $500 for Fusco and Heiman, and an hourly rate of $100 for the paralegals[5]—adequately compensates Counsel for the time they spent on this case, the risks they accepted in undertaking the representation of Plaintiff on a contingency basis, and the successful result they obtained for

---

[4] Confusingly, Fusco attempts to characterize the award he seeks as resulting in an effective hourly rate of $533.33, because that would be the effective rate if $7,000, the amount he received under the EAJA, were subtracted from his award under Section 406(b). (*See* Dkt. 16-1, at 7; Dkt. 18, at 4 n.2.) But Fusco is seeking an award under Section 406(b) *instead* of the award he already received under the EAJA. That Fusco already received the fees under the EAJA does not mean his current award will be reduced by $7,000 when he refunds that amount to Plaintiff; it means only that he cannot recover fees under both the EAJA and Section 406(b).

[5] This breaks down to an award of $18,750 for the work performed by Fusco and Heiman, and $320 for the work performed by the paralegals.

9

Plaintiff. *Cf. Gisbrecht*, 535 U.S. at 808 ("If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is . . . in order."). This fee amount of $19,070 provides reasonable compensation for the legal services provided by Counsel, while also advancing the underlying policy goal of ensuring that claimants have qualified counsel representing them in Social Security cases. *See, e.g.*, *Devenish v. Astrue*, 85 F. Supp. 3d 634, 639 (E.D.N.Y. 2015) ("[A]n award . . . amounting to an hourly rate of $350 . . . satisfies the underlying policy goal of ensuring that claimants have qualified counsel in their social security appeals"); *Muniz v. Astrue*, No. 09-CV-3954 (ARR), 2011 WL 5563506, at *6 (E.D.N.Y. Nov. 15, 2011) ("Further, an award of fees . . . amounting to an hourly rate of $333.33 . . . satisfies the underlying policy goal of enabling social security claimants to secure quality legal representation.").

## CONCLUSION

Plaintiff's motion for attorney's fees under Section 406(b) is granted in part, and Fusco is awarded $19,070 in attorney's fees. Upon receipt of this award, Fusco shall promptly refund Plaintiff $7,000, which represents the EAJA fees already received by counsel.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  September 30, 2021